**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MARIBEL RODRIGUEZ, GISSELLA
RODRIGUEZ, NORMA REYES, and MARIA
ANTUNEZ, on behalf of themselves and all
others similarly situated,

                        Plaintiffs,

                - against -

ALMIGHTY CLEANING, INC., PMCB
CLEANING & MAINTENANCE, INC., and
PHILLIP PATANJO,

                       Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 09-2997 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

       Plaintiffs Maribel Rodriguez, Gissella Rodriguez, Norma Reyes and Maria Antunez

(collectively "Plaintiffs") commenced this action under the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201 *et seq.*, and the New York State Labor Law ("NYSLL") to recover unpaid wages

against Defendants Almighty Cleaning, Inc. ("Almighty Cleaning"), PMCB Cleaning &

Maintenance, Inc. ("PMCB"), and Phillip Patanjo ("Patanjo") (collectively "Defendants").

       The Complaint was filed on July 14, 2009. DE 1. Defendants filed an Answer on

September 11, 2009 denying many of the allegations in the Complaint. DE 5. On November 19,

2009, Plaintiffs filed a motion for conditional class certification of an FLSA collective action.[1]

DE 7. Defendants filed opposition to the class certification motion on December 21, 2009.

---

[1]     On August 25, 2010, this motion was terminated by the Court, indicating that it would be
decided at the time of the Motion for Default Judgment.

DE 14. Three months later, in March 2010, Defendants' counsel filed a motion to withdraw as counsel based on Defendants' failure to communicate with counsel and failure to pay legal fees. DE 17. This motion was granted on May 17, 2010, at which time Judge Seybert ordered that "Defendants are directed to obtain new counsel, and such counsel is directed to file a notice of appearance, within 30 days of the entry of this Order." DE 18. On May 21, 2010, Defendant's former counsel filed an Affidavit of Service stating that he had served the Order granting his motion to withdraw on Defendants by first class mail and certified mail. DE 19.

On July 14, 2010, Judge Seybert issued an Order to Show Cause stating that Defendants had failed to obtain new counsel or communicate in any way with the Court. DE 20. Judge Seybert ordered that "defendants show cause why the Court should not entertain a motion by plaintiffs to strike the answer and for a default judgment. The defendants shall file a response with the Court within 30 days of the date of this Order. . ." *Id.*[2] On the same day that the Order was issued, the Clerk of the Court mailed the Order to Show Cause to each Defendant via certified mail. The copies of the Order mailed to Defendants Almighty and PMCB were returned as undeliverable [DE 22, 24]. However, the copy mailed to Defendant Patanjo was signed for by Michelle Patanjo on July 16, 2010 [DE 21]. On August 11, 2010, Plaintiff filed a letter with the Court seeking to adjourn a scheduled pre-trial conference due to Defendants' continued failure to obtain counsel. DE 26. The letter indicates that a copy was sent to each Defendant. *Id.*

On August 25, 2010, Plaintiff filed a motion for default judgment as to all Defendants. DE 30. Subsequently, the Clerk of the Court issued a certificate of default as to all Defendants.

---

[2] The Order to Show Cause also noted that "while the individual defendant may represent himself, the corporate defendants may not." DE 20.

DE 34.  District Judge Seybert referred the matter to me for a Report and Recommendation as to whether the pending motions for default judgment and conditional class certification should be granted, and to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded based upon such determination.  DE 35.

## II.  PERTINENT FACTS

Defendants Almighty Cleaning and PMCB are each engaged in the commercial and residential cleaning business.  Compl. ¶¶ 25, 30.    Defendant Patanjo is the owner and operator of both Almighty Cleaning and PMCB.  *Id.* ¶¶ 32, 42.  Plaintiffs Maribel Rodriguez and Gissella Rodriguez were employed by Defendants to clean residential and commercial buildings from approximately May 2006 until June 2009.  *Id.* ¶¶ 15-18.  Plaintiff Norma Reyes was employed by Defendants to clean residential and commercial buildings from approximately April 2007 until June 2009.  *Id.*  ¶¶ 19-20.  Plaintiff Maria Antunez was employed by Defendants to clean residential and commercial buildings from approximately February 2009 until June 2009.  *Id.* ¶¶ 21-22.

Plaintiffs contend that they were required to be paid overtime pay at the statutory rate of time and one-half the regular rate of pay after working more than 40 hours in a workweek.  *Id.* ¶¶ 61, 65, 69, 73.  In most workweeks during their employment, Plaintiffs claim they worked more than 70 hours for the Defendants.  *Id.* ¶¶ 62, 66, 70, 74.  Further, Plaintiffs allege that Defendants failed to compensate them at the statutory minimum wage.  *Id.* ¶¶ 76-79.  The Complaint asserts that there are over twenty current and former employees who are similarly situated to Plaintiffs in that they have also been denied overtime compensation.  *Id.* ¶ 92.

III.  **MOTION FOR A DEFAULT JUDGMENT**

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true.  *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Garden City Boxing Club, Inc. v. Morales*, 2005 WL 2476264, at *3 (E.D.N.Y.  Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).  The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek.  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

A.  **Liability**

As an initial matter, this Court must determine that Plaintiffs have adequately pled the requirements of liability under the FLSA and the NYLL.  In order to make a *prima facie* showing of a violation under the minimum wage and overtime provisions of the FLSA, Plaintiffs must adequately allege that they were covered employees under the FLSA.  The FLSA minimum-wage and overtime provisions apply only to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'individual coverage'), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called 'enterprise coverage')."  *Shim v. Millennium Group*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see also* 29 U.S.C. §§ 206(a), 207(a).  Individual coverage does not apply, since Plaintiffs do not allege that they were personally "performing work involving or related to the movement of persons or

4

things . . . between states." *Shim*, 2009 WL 211367, at *2; *see also* 29 C.F.R. § 779.103).

Enterprise coverage, however, does apply.

An entity constitutes an enterprise where "the related activities performed (either through unified operation or common control) by any person or persons [are] for a common business purpose." 29 U.S.C. § 203(r). Plaintiffs' Complaint alleges that both Defendant Almighty Cleaning and Defendant PMCB were owned and operated by Defendant Patanjo and that Defendant Patanjo exercised control over both businesses. DE 1 ¶¶ 32, 39-42, 49-51, 56. Plaintiffs further allege that Defendants Almighty Cleaning and PMCB each engaged in commercial and residential cleaning, and that Plaintiffs worked simultaneously for both entities. DE 1 at ¶ 25, 30, 15-22. Under the statute, the enterprise must also have no less than $500,000 in annual gross volume of business done. 29 U.S.C. § 203(s)(1)(A). Plaintiffs allege that Defendants meet these requirements of the definition of an "enterprise." DE 1 at ¶ 57. Thus, Plaintiffs have adequately pled that Defendants constituted an "enterprise" under the FLSA.

Plaintiffs have also adequately alleged that the enterprise was engaged in interstate commerce. Because even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce[,]" *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998), the test is met if Plaintiffs merely handled supplies or equipment that originated out-of-state. Other cases discussing this element in an FLSA context have held that it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce. *See Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 88 (E.D.N.Y. March 3, 2010) ("Cleaning products purchased locally have been moved in or produced for commerce, and custodians are

employees who handle these products.") (internal quotations omitted); *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) ("Plaintiff's handling of janitorial goods that have moved in commerce is more . . . [is] more than sufficient to invoke enterprise coverage."); *Archie*, 997 F. Supp. at 530 (concluding that bags, brooms, shovels, and pails used by sanitation workers "undoubtedly moved in interstate commerce to New York City."). The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York. Plaintiffs' Complaint, therefore, fairly alleges that the Defendants are an "enterprise engaged in commerce." Consequently, the Court finds that Plaintiffs are covered by the FLSA.

The Plaintiffs allege violations of the FLSA's minimum-wage provision, which states that "[e]very employer shall pay to each of his employees . . . not less than . . . $5.85 an hour . . ." 29 U.S.C. § 206(a). Plaintiffs' Complaint alleges that Defendants have "willfully failed to pay plaintiffs the minimum wages for hours worked." DE 1 at ¶ 113. For example, Maribel Rodriguez states that throughout her 37 months of employment with Almighty Cleaning and PMCB, her normal work schedule was six days a week. She worked Monday and Tuesday from 5 a.m. until 8 p.m., with a half-hour break each day, for a total of 14.5 hours each of those days. *See* Affidavit of Maribel Rodriguez ("M. Rodriguez Aff.") annexed as Ex. 6 to the Declaration of Troy L. Kessler, Esq. ("Kessler Decl."), ¶ 8. On Wednesdays, Maribel Rodriguez worked from 5 a.m. until 7 p.m. (13.5 hours). *Id.* For Thursdays, Fridays, and Saturdays, Maribel Rodriguez worked from 7 a.m. to 7 p.m. (11.5 hours each day). *Id.* In a normal week, then, Maribel Rodriguez worked 77 hours. During the summer months, she worked six days a week – Monday through Wednesday from 5 a.m. to 10 p.m. (16.5 hours each day) and Thursday through Sunday

from 5 a.m. until 9 p.m. (15.5 hours each day). *Id.* For the summer, she was working 111.5 hours per week. Throughout her employment, Maribel Rodriguez was paid approximately $400 per week. *Id.* This figure is supported by copies of pay stubs Maribel Rodriguez received from Almighty Cleaning and PMCB. *See* Supplemental Declaration of Troy L. Kessler, Esq., Ex. "10-A." As a result, Maribel Rodriguez was averaging between $3.59 per hour during the summer months and $5.19 per hour during the rest of the year while the minimum wage under the FLSA was $5.85 per hour. The same hours and salary are set forth by Gissella Rodriguez, *see* Kessler Decl., Ex. 7, and Maria Antunez, *see* Kessler Decl., Ex. 8. Plaintiffs have therefore sufficiently pled a violation of 29 U.S.C. § 206. *See Shim*, 2009 WL 211367, at *3.

Plaintiffs also allege violations of the FLSA's overtime provision, which states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Maribel and Gissella Rodriguez as well as Maria Antunez state that they were paid $400 weekly, which, pursuant to the previous calculations, supports this contention. *See* M. Rodriguez Aff., ¶ 8; G. Rodriguez Aff., ¶ 8; Antunez Aff. ¶ 8. Because the Complaint alleges that Plaintiffs worked more than 40 hours a week and were not paid time-and-a-half for their overtime hours, Plaintiffs have sufficiently pleaded a violation of 29 U.S.C. § 207. DE 1 at ¶ 96; *see also Shim*, 2009 WL 211367, at *3.

The Complaint also asserts violations of the New York Labor Law's minimum wage provision, which specifies that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" the wage established by statute for that year. N.Y. Labor Law

§ 652(1).  During calendar year 2006, the minimum wage under the New York Labor Law was $6.75 per hour while that rate increased to $7.15 per hour for work performed between January 1, 2007 and July 23, 2009.  N.Y. Labor Law § 652; 12 N.Y.C.C.R.R. § 137-1.2.  Based upon the calculations above showing that the Plaintiffs were being paid between $3.59 per hour and $5.19 per hour compared to the FLSA rate of $5.85 per hour, it is clear that the wages paid to the Plaintiffs as they have asserted them fall below the N.Y. Labor Law hourly minimum wage of $7.15.  Because the Complaint alleges that "Defendants willfully violated plaintiffs' rights by failing to pay plaintiffs the minimum wage for all hours of work performed each week," Plaintiffs have adequately pleaded a violation of N.Y. Labor Law § 652.  DE ¶ 117.

Finally, Plaintiffs allege a violation of the New York Labor Law's overtime provision, which specifies that eight hours constitutes a "legal day's work," N.Y. Labor Law § 160, and that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . ."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  Plaintiffs also allege a violation of the New York Labor Law's spread-of-hours provision, which requires that an employee receive "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage" for any day the employee works 10 or more hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  Because the Complaint alleges that Plaintiffs worked more than ten hours per day as well as more than forty hours per week, were not paid at time-and-a-half for their overtime hours, and were not paid an additional hour at the minimum wage rate for days in which they worked 10 or more hours, Plaintiffs have sufficiently pleaded a violation of these provisions.

## B.    Entry of Default

For a movant to obtain a default judgment, it must complete a two-step process.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R.. Civ. P. 55(a); *see FashionTV.com GMBH v. Hew*, 2007 WL 2363694, at *2 (S.D.N.Y.  Aug. 17, 2007).  Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiffs have done here.  *See Kieit Constructors, Inc. v. Franbuilt, Inc.,* 2007 WL 4405029 at *2 (W.D.N.Y.  Dec. 14, 2007); *FashionTV.com*, 2007 WL 2363694, at *2.  The Clerk of the Court noted the default of Defendants Almighty Cleaning, PMCB, and Patanjo, but judgment has not been entered for Plaintiffs.  *See* DE 34.

Rule 55(b)(2) provides that, except in cases in which "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" (*see* Rule 55(b)(1)), "the party must apply to the court for a default judgment."  The determination of a motion for default judgment is left to the sound discretion of the district court.  *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 160, 610, 615 (2d Cir. 1999).

In determining whether to grant a default judgment, the court may consider "numerous factors, including 'whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt.'" *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)).  As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a

default. *See Enron Oil Corp. v. Diakuhara*, 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see also Basile v. Wiggs*, 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for court's consideration including defaulting party's bad faith, "possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect") (second alteration in the original) (quoting *Feely v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999)).

As to the first factor, both the corporate and individual Defendants ignored this Court's order to seek substitute counsel by a given date and subsequently did not respond to the Court's Order to Show Cause. Furthermore, Defendants' counsel withdrew in part due to the clients' failure to communicate regarding this case. This repeated conduct shows a willful and deliberate disregard for this Court's orders, which militates in favor of a default judgment. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (upholding default judgment where "the record was clear that [individual and corporate defendants], not having obtained counsel as ordered by the time of the January 1999 conference (and having filed no papers in opposition to the default motion by the court's March 1 deadline), were in default"); *Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) ("Having determined that the district court properly ordered [corporate defendant] to appear through counsel, it was appropriate to enter a

default judgment when [corporate defendant] willfully disregarded the district court's order.");

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) ("There

is no question that the default in favor of [plaintiff] was properly entered; [the corporate

defendant] had failed to comply with the court's April 1980 order [to obtain new counsel]"); *SEC

v. Alexander*, No. 00CIV7290, 2004 WL 1468528, at *5-9 (S.D.N.Y. June 28, 2004) (finding

individual defendants willfully defaulted by failing to obtain new counsel or appear *pro se* within

time allotted).

Next, the Court must consider whether Defendants have a meritorious defense. "A

defense is meritorious if it is good at law so as to give the factfinder some determination to

make." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). However, a

defendant must "present evidence of facts that if proven at trial, would constitute a complete

defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). As noted above, Defendants filed

an Answer denying many of the allegations in the Complaint and asserting sixteen affirmative

defenses including: statute of limitations; Defendants are not an enterprise as defined by the

FLSA; Plaintiffs were paid all wages due to them under the FLSA; Plaintiffs are not similarly

situated to putative class members, among others. *See* DE 5. While the Answer contains only

general defenses and does not present any underlying facts, that response is sufficient to raise a

meritorious defense. *See Wharton v. Nassau County*, No. 10-CV-0265, 2010 WL 4878998, at *2

(E.D.N.Y. Nov. 22, 2010) ("Defendants, by filing an Answer that denies Plaintiff's allegations

and raises fourteen affirmative defenses, have mounted a meritorious, although untested,

defense."); *Franco v. Ideal Mortgage Bankers, Ltd.*, No. 07-3965, 2010 WL 3780972, at *3

(recommending that Defendant who filed an answer asserting twenty-five affirmative defenses be considered to have raised a meritorious defense).

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003)).

Although Defendants have raised a meritorious defense, this Court finds that the other factors set forth in *Mason Tenders* weigh in favor of granting Plaintiff's motion for a default judgment. The fact that Defendants have not submitted a brief in opposition to Plaintiff's motion further supports that conclusion. Moreover, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, Defendants will still have fourteen days after the service of this Report and Recommendation to raise objections to these findings should they so choose. Therefore, I respectfully recommend to Judge Seybert that Plaintiffs' motion be granted and that a default judgment be entered against Defendants Almighty Cleaning, PMCB, and Phillip Patanjo.

## IV.     DAMAGES CALCULATION

Plaintiffs seek recovery of unpaid minimum wages under the NYSLL and overtime wages under the FLSA and NYSLL, as well as spread of hours pay under the NYSLL.  Additionally, Plaintiffs seek liquidated damages under both the NYSLL and the FLSA.[3]

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir.1995)).  The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992).  The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded."  *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir.1989).  The moving party is entitled to all reasonable inferences from the evidence it offers.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981).

---

[3]     The Plaintiffs' motion for default initially sought reimbursement of attorneys' fees.  *See* DE 31 ¶ 13, DE 32 at 14.  However, on December 16, 2010, Plaintiffs' attorney submitted a letter stating that "plaintiffs withdraw that portion of their motion for a default judgment which seeks an award of attorney's fees."  DE 39.

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, [and/] or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (2008). The employer bears the burden of establishing that liquidated damages should not be awarded. *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir.1997). However, because Defendants have not responded to the motion for default and have not carried their burden, liquidated damages are appropriate.

Under New York Labor Law, an employee is entitled to recover unpaid minimum wages and overtime, in addition to unpaid spread of hours pay. 12 N.Y.C.R.R. §§ 142-2.2, -2.4 (2010). New York law also provides for liquidated damages equivalent to 25% of the total amount of the wages found to be due, if the employer's underpayments were willful. N.Y. Lab. Law §§ 198(1-a), 663(1) (McKinney 2009). Under New York Labor Law, willfulness is established where employers voluntarily underpay employees. *Moon v. Kwon*, 248 F.Supp.2d 201, 235 (S.D.N.Y.2002). This standard is not appreciably different from the FLSA standard. *Id.* Defendants voluntarily underpaid Plaintiffs and their actions were willful under the FLSA, thus Plaintiffs may receive a liquidated damages award under New York law. Likewise, New York law also provides for spread of hours wages, which is "one hour's pay at the basic minimum hourly wage rate" for each day in which an employee worked more than 10 hours. 12 N.Y.C.R.R. § 142-2.4 (2010).

In FLSA and New York Labor Law cases,

> The statute of limitations . . . under federal law is three years in light of Plaintiffs' uncontested factual proffers supporting the conclusion that Defendants' underpayment was willful. 29 U.S.C. § 255(a). The statute of limitations for the state law claim is six years. N.Y. Lab. Law § 663(3). Plaintiffs' federal claim subsumes

their state law claim for the overlapping damages period. For the period that is untimely under the federal three-year statute of limitations but timely under the state law six-year statute of limitations, the state law claim is operative. *See Khan v. IBI Armored Services, Inc.*, 474 F. Supp. 2d 448, 450 n. 1 (E.D.N.Y.2007).

*Rios v. Neighborhood Const. Corp.*, No. 07 Civ. 8701, 2009 WL 3335354, at *1 n. 2 (S.D.N.Y. Oct. 14, 2009).

"In an FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (Report & Recommendation), *adopted by* 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). *See also Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002); *Zhao v. East Harlem Laundromat, Inc.*, 07-CV-201, 2010 WL 4628294, at *6 (S.D.N.Y. Oct. 8, 2010). As such, this Court has calculated the damages owed based on the representations in Plaintiffs' affidavits, the declarations of Plaintiffs' counsel (DE 31, 40) and the supporting documentation attached to those declarations (DE 40).

Unpaid minimum wages due are calculated by subtracting the hourly rate paid to Plaintiffs each week from New York's minimum wage rate. That difference is then multiplied by the number of hours worked each week by Plaintiffs. The totals for each week are then added together to yield the total unpaid minimum wages due.

Unpaid overtime wages are calculated by multiplying the New York minimum wage rate or the FLSA minimum wage rate, whichever is higher,[4] by 0.5 to determine the additional

---

[4]     Under the FLSA, where the state minimum wage is higher than the federal minimum wage, the federal overtime rate is calculated based on the state minimum wage. 29 C.F.R. § 778.5.

amount owed per hour over 40 hours worked. That amount is then multiplied by the number of hours of overtime worked per week to yield a sum of overtime pay owed per week. The amounts for each week are then aggregated to determine the total amount of overtime damages owed.

Because Plaintiffs worked more than ten hours each day, they also seek New York spread of hours damages, which amount to one hour's pay at the minimum wage rate for each day worked over ten hours. These damages are calculated by multiplying the number of days worked per year by the by the minimum wage rate for that period.

FLSA liquidated damages are assessed at an amount equal to the overtime and minimum wage damages owed to each Plaintiff. On the other hand, New York liquidated damages are calculated here by multiplying the total amount of unpaid wages due under New York law by .25. By way of illustration, Plaintiff Maribel Rodriguez's damages for Defendants' *minimum wage* violations for 2007 are calculated as follows:

- In 2007, Maribel Rodriguez worked 77 hours per week for 52 weeks. Her hourly rate varied between $1.30 and $5.45.

- New York's minimum wage rate in 2007 was $7.15. The difference between $7.15 and Maribel Rodriguez's hourly rate for each week was calculated, yielding an amount owed per hour of between $1.70 and $5.85 each week.

- The hourly rate for each week was then multiplied by 77, to yield the amount owed for each week. For example, during the week of January 5, 2007, Maribel Rodriguez worked 77 hours at a rate of $2.14 per hour. The amount owed per hour for that week is $5.01. Thus, the amount owed in minimum wages for the week is $385.55.

- Aggregating the totals owed to Maribel Rodriguez for each week of 2007 yields a total sum owed in minimum wages for 2007 of $11,316.93.

With regard to *overtime* violations, Maribel Rodriguez's overtime wages due for 2007 are calculated by multiplying $7.15 by 0.5, yielding a sum of $3.575 due for each hour worked over

40 hours. Multiplying $3.575 by 37 hours per week, over and above the 40 hours Maribel

Rodriguez worked daily, yields a sum of $132.28 owed in overtime per week. Aggregating the

amount owed for each week yields a sum of $6,878.30 owed in overtime wages for 2007.

As to *spread-of-hours* violations, Maribel Rodriguez worked more than ten hours a day,

six days a week, for 52 weeks in 2007. Multiplying 52 by 6 and then again multiplying that

amount by $7.15 yields a sum of $2230.80 due in spread of hours pay for 2007.

Based on these figures, Maribel Rodriguez's liquidated damages under the FLSA are

$6,878.30. Her liquidated damages under New York law are 25% of the sum of her minimum

wage damages ($11,316.93) and her spread of hours damages ($2230.80), which yields a sum of

$3,386.93. Thus, for 2007, Maribel Rodriguez is entitled to damages in the amount of

$28,460.46.

For the additional Plaintiffs, the Court has taken the hours worked information from their

affidavits, as well as the two attorney declarations containing various pay stubs and damages

charts. *See* Kessler Decl.; Kessler Supp. Decl.; M. Rodriguez Aff. (Ex. 6); G. Rodriguez Aff.

(Ex. 7); Antunez Aff. (Ex. 8); Damages Calculations for M. Rodriguez (Ex. 10); Damages

Calculations for G. Rodriguez (Ex. 11); Damages Calculations for N. Reyes (Ex. 12); Damages

Calculations for M. Antunez (Ex. 13); M. Rodriguez Pay Stubs (Ex. 10-A); G. Rodriguez Pay

Stubs (Ex. 11-A); N. Reyes Pay Stubs (Ex. 12-A); M. Antunez Pay Stubs (Ex. 12-A). After

performing the previous calculations in the same manner for each Plaintiff for each year worked

within the applicable time period, the Court finds that the following total damages are due to each Plaintiff[5]:

|  | FLSA Overtime | FLSA Liquidated Damages | NYLL Overtime | NYLL Minimum Wage | NYLL Spread of Hours | NYLL Liquidated Damages | Total |
|---|---|---|---|---|---|---|---|
| Maribel Rodriguez | $20,067.88 | $20,067.88 | $874.13 | $38,303.13 | $6994.50 | $11542.94 | $97,850.46 |
| Gisella Rodriguez | $32,879.91 | $32,879.91 | $1,360.71 | $59,192.99 | $6,994.50 | $16,887.05 | $150,195.07 |
| Norma Reyes | $14,616.39 | $14,616.39 | N/A | $43,195.61 | $5,062.20 | $12,064.45 | $89,555.04 |
| Maria Antunez | $2,645.50 | $2645.50 | N/A | $6,555.00 | $858.00 | $1,853.25 | $14,557.25 |

Finally, Plaintiffs seek to have Defendants each held jointly and severally liable for the damages awarded because each Defendant can be considered an "employer" under both the FLSA and the NYLL. DE 32 at 8-9. Courts in this circuit have held that the same analysis

[5]     The total amounts due to each Plaintiff as calculated by this Court are higher than the total amounts calculated by Plaintiffs' counsel. There are three reasons for this discrepancy. First, Plaintiffs' counsel failed to include an amount due as liquidated damages under the NYLL for amounts owed for minimum wages. Second, Plaintiffs' counsel calculated interest at a rate of 9% for spread of hours damages. There is no legal support cited for this amount, nor is it referenced in Plaintiffs' motion or supporting affidavits. As such, the Court did not include this interest amount in its calculations. Third, Plaintiffs' counsel included liquidated damages under *both* the FLSA and the NYLL for overtime damages arising during the FLSA statute of limitations period. However, this would result in a double recovery for Plaintiffs for that period. Because the overtime damages arising after July 14, 2006 are awarded under the FLSA, it is appropriate that only FLSA liquidated damages be assessed for those damages. *See Rios,* 2009 WL 3335354, at *1 n. 2 ("Plaintiffs' federal claim subsumes their state law claim for the overlapping damages period."); *see also Lanzetta v. Florio's Enterprises, Inc.*, No. 08-CV-6181, 2011 WL 253961, at *7 (S.D.N.Y. Jan. 25, 2011)*; Zhao v. East Harlem Laundromat, Inc.*, No. 07-CV-201, 2010 WL 4628294, at *9 (S.D.N.Y. Oct. 8, 2010) (awarding only FLSA liquidated damages on FLSA claims and awarding only NYLL liquidated damages on NYLL claims). However, where overtime damages were assessed pursuant to the New York Labor Law, i.e. for claims falling outside the FLSA statute of limitations period, liquidated damages under New York law were assessed and are reflected here.

applies when determining whether defendants are jointly liable as employers under the FLSA and

the NYLL. *See Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184, 189 (S.D.N.Y.

2003); *Zheng v. Liberty Apparel Co.*, No. 99-CV-9033, 2002 WL 398663, at *6 n.3 (S.D.N.Y.

Mar. 13, 2002). In *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), the

Second Circuit stated that:

> To be held liable under the FLSA, a person must be an "employer,"
> which § 3(d) of the statute defines broadly as "any person acting
> directly or indirectly in the interest of an employer in relation to an
> employee." 29 U.S.C. § 203(d) (1994). The Supreme Court has
> emphasized the "expansiveness" of the FLSA's definition of
> employer. *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 38
> L.Ed.2d 406 (1973). Above and beyond the plain language,
> moreover, the remedial nature of the statute further warrants an
> expansive interpretation of its provisions so that they will have "the
> widest possible impact in the national economy." *Carter v. Dutchess
> Community College*, 735 F.2d 8, 12 (2d Cir.1984).

Furthermore, Courts in this circuit have held that an individual corporate officer or owner is

deemed an employer under the FLSA "in situations where the individual has overall operational

control of the corporation, possesses an ownership interest in it, controls significant functions of

the business, or determines the employees' salaries and makes hiring decisions." *Lopez v.

Silverman*, 14 F. Supp. 2d 405, 412 (S.D.N.Y. 1998); *see also Ansoumana*, 255 F. Supp. 2d at

192 ("[individual defendants] are the founders, owners, and sole shareholders of [corporate

defendant], and together they personally oversee and operate the companies and their agents on a

daily basis. Thus, under *Herman*, each is an "employer" under the FLSA, and can be held

individually liable for failure to pay minimum wages to their employees."). The Complaint

alleges, *inter alia*, that Patanjo had authority over personnel decisions, authority over payroll

decisions, and authority to hire and fire employees. DE 1 ¶¶ 39-41; ¶¶ 49-51. As such, I find that

Plaintiffs' have adequately pled that Defendant Patanjo met this test, and recommend that all Defendants be held jointly and severally liable.

## V.    CONDITIONAL CLASS CERTIFICATION

As noted *supra*, Plaintiffs' motion for conditional class certification is also currently pending before this Court.  Plaintiffs' motion, filed on November 19, 2009, seeks: (1) conditional certification as an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)"); (2) Defendants' production of names and last known addresses of potential class members employed by Defendants within six years prior to the commencement of this action; and (3) Court authorization to post and circulate the proposed Notice of Pendency and Consent to Join, in English and Spanish, to all individuals who are similarly situated in this potential collective action.  DE 9.  Prior to withdrawing, Defendants' counsel filed opposition to Plaintiffs' motion contending that Plaintiffs cannot demonstrate that the potential plaintiffs were victims of any policy or practice maintained by Defendants and that Plaintiffs failed to establish that they are similarly situated to potential opt-in plaintiffs.  DE 14.

While it is unusual to decide a conditional class certification motion contemporaneously with determining that Defendants have defaulted as to the named Plaintiffs, this is not the first time that such circumstances have arisen.  Courts in other jurisdictions facing this same procedural setting have determined that it is proper to grant default judgment in favor of named Plaintiffs while simultaneously granting a motion for conditional class certification under the FLSA.  *See James v. Claiborne*, No. 07-1570, 2009 WL 994951, at *3-4 (W.D. La. April 13, 2009) (granting default judgment in favor of named plaintiffs and conditionally certifying matter as an FLSA collective action); *Davis v. Precise Commc'ns Servs., Inc.*, No. 07-3128, 2009 WL

812276, at *1 (N.D. Ga. March 27, 2009) ("[Defendant's] default does not fundamentally change the analysis the court must undertake in deciding whether to conditionally certify Plaintiffs' class."); *Sniffen v. Spectrum Industrial Servs.*, No. 06-622, 2007 WL 1341772, at *1 (S.D. Ohio Feb. 13, 2007) (granting default judgment and conditionally certifying class).

> The FLSA provides, in pertinent part, as follows:

> > Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages. *Id*. (cited in *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citations omitted)). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. First, the court determines whether the proposed class members are "similarly situated." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." *Id*. (citing 29 U.S.C.

§ 216(b)) (additional citations omitted). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are "actually 'similarly situated.'" *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Id.* (citations omitted).

The instant decision concerns only the first step – whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008), and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Fodd, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Rule 23. *Rodolico*, 199 F.R.D. at 481 (citing cases). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Industries, Inc.,* 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007).

This determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiffs. *Sexton*, 2009 WL 1706535, at \*3 (quoting *Hens v. ClientLogic Operating Corp.,* No. 05 Civ. 381S, 2006 WL 2795620, at \*3 (W.D.N.Y. Sept. 26, 2006)); *see also Hallissey v. Am. On-line, Inc.,* No. 99 Civ. 3785, 2008 WL 465112, at \*1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); *Wraga v. Marble Lite, Inc.,* No. 05 Civ. 5038, 2006 WL 2443554, at \*2 (E.D.N.Y. Aug. 22, 2006) (granting approval of a collective action notice "based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees").

In the instant case, Plaintiffs allege that they were subjected to the same FLSA violations as the potential opt-in plaintiffs while employed by the Defendants. *See* DE 9 at 7. Each named Plaintiff has submitted an affidavit stating that she believes the other twenty to thirty cleaners employed by Defendants were not provided with proper payment for overtime. *See* Affidavits of Maribel Rodriguez ("M. Rodriguez Aff."), Gissella Rodriguez ("G. Rodriguez Aff."), Norma Reyes ("Reyes Aff."), and Maria Antunez ("Antunez Aff.") at ¶ 2, attached as Exhibits 3, 4, 5, and 6 to the Declaration in Support of Plaintiffs' Motion (DE 8). Further, the four affidavits submitted specifically name additional co-workers, employed as cleaners with the same job duties as Plaintiffs, who also were allegedly not properly compensated for overtime by Defendants. *See* M. Rodriguez Aff. ¶ 11 (naming two cleaners by first name only, other than Plaintiffs, who allegedly were not properly compensated for overtime worked); *see also* G. Rodriguez Aff. ¶ 11, Reyes Aff. ¶ 11, and Antunez Aff. ¶ 11 (each naming one cleaner by first

name only, other than Plaintiffs, who allegedly was not properly compensated for overtime worked). Each Plaintiff states that her knowledge of the other laborer(s) not being compensated for overtime worked is based on the fact that they discussed the matter among themselves. *See* M. Rodriguez Aff. ¶ 11, G. Rodriguez Aff. ¶ 11, Reyes Aff. ¶ 11, and Antunez Aff. ¶ 11.

Defendants argue that the evidence presented by Plaintiffs is insufficient to meet the minimal burden necessary to show that Plaintiffs are similarly situated with the putative class and that Plaintiffs fail to show that they and opt-in plaintiffs were subject to a common policy or plan. DE 14. Defendants object to a series of alleged deficiencies in Plaintiffs' affidavits, specifically that the affidavits are "essentially identical," that the Plaintiff's beliefs that other co-workers were not compensated for overtime are based on "unspecified discussions," and that Plaintiffs each identify one or two co-workers by first name only. However, as noted above, Plaintiffs are not required to definitively show that potential plaintiffs are similarly situated or were subject to a common policy or plan at this stage, but must make only a "modest" or "preliminary" showing. *See Summa v. Hofstra University*, No, CV 07-3307, 2008 WL 3852160, at *3 (E.D.N.Y. Aug. 14, 2008); *Ruggles v. Wellpoint, Inc.*, 591 F. Supp. 2d 150, 161 (N.D.N.Y 2008). I find that the factual allegations in the affidavits submitted by Plaintiffs are sufficient to meet this evidentiary standard. *See Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278, at *1 (E.D.N.Y. Oct. 11, 2007) (granting conditional certification where plaintiff's affidavit identified potential plaintiffs by first names, nationalities and/or nicknames); *Ruggles v. Wellpoint, Inc.*, 591 F. Supp. 2d 150, 160 (N.D.N.Y. 2008) (granting conditional certification where plaintiffs' affidavits stated they were "informed" and/or "believed" that other employees were not being paid overtime and affidavits were "exceptionally similar"); *Gjurovich v.*

*Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003) (granting conditional certification where Plaintiff identified other employees who "may not" have received overtime compensation); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (granting conditional certification where Plaintiff's affidavit stated he "observed" that other employees were not paid overtime).

The Court finds that Plaintiffs have met the lenient evidentiary standard necessary to warrant the determination, at this stage, that the proposed opt-in plaintiffs are "similarly situated." Plaintiffs "have demonstrated a sufficient 'factual nexus between [their] situation and the situation of other current and former' employees, who were potentially denied. . . overtime wages." *Sexton*, 2009 WL 1706535, at *9 (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 308 (S.D.N.Y. 1998)); *Bifulco*, 262 F.R.D. at 215. Accordingly, I respectfully recommend to Judge Seybert that Plaintiff's motion for conditional certification be granted.

Next, Plaintiffs seek Defendants' production of names and last known addresses of potential class members employed by Defendants within six years prior to the commencement of this action as well as Court authorization to circulate the proposed Notice of Pendency. DE 9 at 9. Defendants' only objection to these requests is that the scope of the requests is overly broad because, Defendants argue, Plaintiffs should only be able to send the Notice to potential class members employed within three years prior to the commencement of this suit. DE 14 at 8.

The FLSA has a maximum three-year statute of limitations. *See* 29 U.S.C. § 255. However, Plaintiffs request the contact information of employees going back six years because the state law claims, over which the Court may exercise supplemental jurisdiction, have a six-year statute of limitations. *See* 28 U.S.C. § 1367. In similar cases, courts in this Circuit have

granted both three and six-year periods depending upon the respective court's findings. I find it appropriate and in the interest of judicial economy in this case to allow a six-year period to apply "even if some recipients of the notice will have claims that are time-barred under the FLSA." *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 3, 2009). It appears that there may be a number of employees who have both timely FLSA and state law claims. Plaintiffs filed the Complaint on July 14, 2009. Therefore, the three-year cut-off date for FLSA purposes is July 14, 2006. Because claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256(a), July 14, 2006 is the earliest possible date that a plaintiff in this case may have been last employed by Defendants in order to have a timely claim under the FLSA. *See Sexton*, 2009 WL 1706535, at *10; *Bifulco*, 262 F.R.D. at 216. Named plaintiff Maribel Rodriguez worked for the Defendants from approximately May 2006 to June 2009. *See* Compl. ¶ 15. Some of her FLSA claims may be time-barred while others are not; all of her New York Labor Law claims are timely. The same is true of named plaintiff Gissella Rodriguez. *See* Compl. ¶ 17.

Likewise, the number of Plaintiffs and potential plaintiffs as represented does not appear to be very high. Given these factors, "it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible." *Cano*, 2009 WL 5710143, at *10. This Court finds persuasive the reasoning set forth in those decisions of other courts which have applied a six-year period to determine who is eligible to receive the Notice of Pendency. *See Cano*, 2009 WL 5710143, at * 10; *Wraga v. Marble Lite, Inc.*, No. 05-CV-50382006 WL 2443554, at *3 (E.D.N.Y. Aug. 22, 2006); *Alcantara v. CNA Management, Inc.*, 264 F.R.D. 61, 66-67 (S.D.N.Y. 2009); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y.

1998); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787, 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002).  Requiring Defendants to provide the requested information will not be "unduly burdensome or disruptive to [D]efendant's business operations."  *See Sexton*, 2009 WL 1706535, at *13; *Bifulco*, 262 F.R.D. at 216 (quoting *Hallissey*, 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business.")).  Accordingly, this Court respectfully recommends (i) that Defendants be ordered to provide the requested information promptly to Plaintiff's counsel, and (ii) that the proposed Notice of Pendency be approved.

Lastly, as discussed above, I recommend that Judge Seybert enter a default judgment as to the named Plaintiffs.  However, a default judgment is not warranted as to any potential opt-in plaintiffs who may subsequently consent to become a party to this action.  If individuals opt-in to the action and seek to be added as parties, I recommend that Plaintiffs be required to amend their Complaint to add the claims of these individuals.  The amended complaint should then be served on Defendants so that they have an opportunity to respond.  *See James v. Claiborne*, No. 07-1750, 2009 WL 994951. at *5 (W.D. La. April 13, 2009); *Lopez v. NTI, LLC*, Civ. 2008-1579, 2008 WL 5120542, at *4 (Dec. 4, 2008).

## VI.  **CONCLUSION**

For the reasons set forth above, I respectfully recommend to Judge Seybert that: (1) a default judgment is warranted and should be entered against Defendants Almighty Cleaning, PMCB, and Patanjo as to the named Plaintiffs; (2) the Plaintiffs be awarded damages in the

amount of $102,867.42 to Maribel Rodriguez, $150,195.07 to Gissella Rodriguez, $89,555.04 to Norma Reyes, and $14,557.25 to Maria Antunez; (3) Defendant Almighty Cleaning, Defendant PMCB, and Defendant Patanjo be held jointly and severally liable for these damages amounts; (4) Plaintiffs' motion for conditional certification as an FLSA collective action be granted; (5) Defendants be ordered to produce promptly the names and last known addresses of potential class members; and (6) the Court authorize the posting and circulation of the proposed Notice of Pendency.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), cert. denied, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996).

Counsel for Plaintiff is directed to serve this Order on Defendants forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
      February 28, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge